ShackeleoRD, J.,
delivered the opinion of the Court.
This suit was commenced, by attachment, in the Chancery Court at Memphis. The bill alleges: “The defendant is indebted to complainants in the sum of *526 $1,667, clue, bj note, on the 16th of June, 1866; that he is also indebted to them in the sum of $95, for goods sold and delivered; that the defendant is the part owner of the Steamboat Southerner, and has no other property; that he is a resident of the City of Memphis, and he is about to remove himself and said steamboat from the State.” An attachment was prayed for against the property of the defendant, and was awarded, and the said steamboat was attached. To which attachment bill, the defendant, Mason, appeared and pleaded: “that it was not true, as alleged in complainants’ bill, .that at the time of suing out the attachment, the defendant, R. M. Mason, was about to remove himself or his property, (said Steamboat Southerner,) from the State; because he says that he, the said R. M. Mason, is Captain and part owner of the said Steamboat Southerner, which is engaged in the Memphis & New Orleans Packet trade; that said boat is registered at the port of Memphis, and is wholly owned in said city; that it only goes out of the State, so far as it is necessary to make her regular trips, returning immediately to Memphis, as soon as unloaded and reloaded; and that it is a Memphis boat, owned by, and belonging to the citizens of Shelby County; that he is a citizen of Shelby County, has his residence there; that his family live in said county, and that he was not about to leave the State, only so far, and for such short time, as requires him to make the trip from Memphis to New Orleans; and that other than this, he had not, nor was about to, or intended, leaving, or removing himself from the County of Shelby; that he owns other property in said county, *527 beside said boat; that it is not true, that he, at the time of the suing out of the attachment, had, or was about fraudulently to dispose of his property; and he pleads this in abatement of the suit.” To which plea, the complainant demurred, and assigns cause of demurrer, as follows: “That there was no sufficient denial of the allegations of the bill, that the defendant was about to remove himself or his property, and the said steamboat, out of the State of Tennessee; and that he makes no sufficient averment, that he has other. property subject to execution or attachment, within the jurisdiction of the Court.” The Chancellor disallowed the demurrer; from which, the complainant has appealed to this Court.
The question presented, involves the construction of the attachment laws, upon which the attachment in this case was sued out. The Act gives the right to sue out an attachment against the property of the debtor, if the creditor, his agent or attorney, will make the affidavit, that the debtor is about to remove himself or property, out of the State. The law provides, the attachment laws shall be construed liberally. Giving them the liberal construction required, Was it contemplated by the Legislature, that this species of property, where the owners were residents of the State, and the boat engaged in making her regular trips from a port, the residence of the owners, to a port in another State, returning as regularly, as soon as loaded and unloaded, should be subject to the attachment laws, under this provision of the law? The policy of the State has been, to foster and encourage commerce. To hold that steamboats and vessels, when .used in the ordinary course of business, *528 running regularly in a trade, commanded by tbe owner, or part owner, returning every week, or two weeks, to tbe port, tbe residence of the Captain and owner, is liable, every time tbe boat is leaving tbe port, to an attachment suit, because tbe Captain and owner was about to leave tbe State, would make tbe attachment laws a means of oppression, not designed or intended by tbe Legislature; would have tbe effect to paralyze commerce; would tend to deprive tbe owners of tbe free use of their property, so long as they were owing debts. Our State having large navigable streams running through it, which are our channels of commerce, large sums have been invested, by tbe active and enterprising citizens, in steamboats, in which our products are removed to a distant market, bringing, in return, tbe products of other lands, which are necessary to our comfort, and which increases the wealth and prosperity of the State. We, therefore, think it was not the intention of the Legislature, that such property, thus used and employed, was liable to attachment, while thus engaged. But, where the debtor is removing himself or his property out of the State, with the intention of not returning, or the intention of defeating his creditor in the collection of his debt; or, if the owner of a' boat, not engaged in a regular trade, was about to leave, with the intention of leaving the State, then the attachment could be sued out. The right to do so, would depend upon the facts of the case.
This question came before the Supreme Court of Louisiana, in the case of Russell et al. vs. Wilson, under a statute of that State, which authorized the suing out *529 of an. attachment in particular cases, the language of •which is as follows: “That when the debtor is about to remove his property out of the State, before the debt ■ becomes due, the creditor may sue out an attachment.” In the construction of this Statute, the Court held, it must be understood as applying to property which the creditor might have supposed would not be carried out of the State, and to which he might have looked for his security at the time of contracting, or since; but it would be unreasonable to extend the attachment laws to a species of property, which, from its nature and destination, must necessarily be taken out of the State, and which the creditors of the owner could not have believed would remain continually within its limits. To consider steamboats and vessels, in ordinary cases, as coming within the meaning of the Statute, would be to declare at once, the owners are to be deprived of the free use of their property, so long as they have any out-standing claims against them. If this exception is not written within the law, - it must be implied; for it results from the nature and fitness of things, and is imperiously called for by the interest of trade." 18 Lou. Reports, 367.
We think the principles settled by that case, are consistent with reason and sound public policy. It is insisted, the principles settled in the case of Runyan vs. Morgan, 7 Hum., 218, is decisive of the questions involved in this case. We think not. That case was decided correctly, upon the facts presented. The question turned upon the construction of the affidavit authorizing the attachment. It was a suit at law — there was no *530 plea in abatement — and it could not be beld to apply to boats and vessels engaged in the trade, making regular trips, as set forth in the plea. The plaintiff in the suit made oath, the defendant was indebted to him in the sum of $500; that he was the owner of the steamboat Belle of Nashville, and that he was about removing the boat from the State. The Court held the Act very broad in its provisions, and authorized an attachment, where the party was removing himself or property out of the State. The question in this case, was not before the Court in that case; it rested alone upon the sufficiency of the affidavit. But, altogether a different state of facts is presented in this record. The defendant, in his plea, avers he has other property; that he is a citizen of Memphis; the boat is engaged in a regular trade between that port and New Orleans, etc. We think the plea in this case takes the case out of the principles settled in the case of Runyan vs. Morgan; and we are of opinion, where the owners of a steamboat, residing in this State, are engaged in trade, running their boat from a port in this State, to another -port in a different State, making regular trips from and to a port where the owners reside, it does not fall within the provisions of the attachment laws, which authorize the issuance of an attachment, where the debtor is about to remove himself or property out of the State.
There is no error in the decree of the Chancellor, and it will be affirmed.